FILED
JAMES BONINI
CLERK

04 JAN -6 PM 2: 41

U.S. DISTRICT OHIO
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

KIMBERLY WYSONG, :
901 Mary Sue Drive
Flatwoods, Kentucky, :

      Plaintiff, :   CASE NO. C2 04 07

v. :   JUDGE   JUDGE FROST

THE DOW CHEMICAL COMPANY :   MAGISTRATE JUDGE MAGISTRATE JUDGE ABEL
c/o Statutory Agent for Service
  CT Corporation Systems :
1300 East 9th Street,
Cleveland, Ohio 44114 :

      Defendant. :

### COMPLAINT
### (with Jury Demand)

NOW COMES Plaintiff Kimberly Wysong and proffers this Complaint for damages and equitable relief against Defendant The Dow Chemical Company.

### THE PARTIES

1. Plaintiff is a natural person residing in the State of Kentucky.

2. Defendant is a Delaware corporation registered in Ohio with facilities in Lawrence County, Ohio.

### JURISDICTION AND VENUE

3. Count I is brought pursuant to the laws of the United States, therefore the Court has jurisdiction pursuant to 28 U.S.C. §1331, and has supplemental jurisdiction of Counts II and III pursuant to 28 U.S.C. §1367.

4. Venue is proper pursuant to 28 U.S.C. §1391, due to the fact that the Defendant has facilities in Lawrence County, Ohio, at which all of the events in question took place.

## FACTUAL BACKGROUND

5. Plaintiff was employed by Defendant, as a Production Associate at its production facility in Ironton, Ohio, for approximately three (3) years.

6. During the years 2001 and 2002, Plaintiff took significant amounts of Family Medical Leave Act ("FMLA") leave time for both her own serious health conditions, and the serious health conditions of family members.

7. At the start of 2003, Defendant informed Plaintiff that because she had taken significant amounts of leave time during the previous two (2) years, she would need to clear (i.e. gain approval for) any medical procedure that was to be performed on her by any treating physician through Defendant's Medical Department.

8. On or about May 13, 2003, Plaintiff had a stiff and painful neck, and attended her treating physician to have him look at the problem. The physician prescribed a "trigger point injection" to be given the next day, and did not give Plaintiff any work-related medical restrictions, nor did he prescribe any time off of work for the problem.

9. Pursuant to Defendant's demand described in ¶7 above, Plaintiff immediately approached Defendant's Medical Department to have them review the prescribed treatment. The physician in Defendant's Medical Department stated that the treatment was minimal and "common" for such situations, and approved of the treatment.

2

10. On or about May 14, 2003, Plaintiff received the injection in her neck, and was going to go into to work for her next regular shift.

11. Some time before her scheduled shift on May 14, 2003, Plaintiff was telephoned by Defendant and informed that she would not be allowed to return to work unless and until she signed a full authorization to have Defendant's Medical Department receive all of her medical records, which would then be reviewed by Defendant's "Medical Board" to determine whether she should be allowed to return to work.

12. On or about May 15, 2003, Defendant mailed a letter to Plaintiff stating that her FMLA leave "request" had been granted. When Plaintiff went to Defendant's Human Resources department to complain that she had not requested any such leave, she was asked to wait and then handed a second letter stating that she was on FMLA leave, but with the "request" language omitted.

13. The following week, Plaintiff was informed by Defendant that she would need to pass a "work capacities exam." Plaintiff protested that her doctor had not taken her off of work, and requested that the "exam" be scheduled as soon as possible.

14. To date, Defendant has steadfastly refused to schedule the alleged "functional capacities exam," and has also refused to allow Plaintiff to return to work.

15. Upon repeated written and verbal inquiries by both Plaintiff herself and Plaintiff's counsel, Defendant has refused to identify any physician who stated that Plaintiff had a serious health condition in and since May of 2003 that would require the use of FMLA leave time, or mean that she could not perform any essential function of her former position.

3

16. On December 3, 2003, Defendant sent a certified letter to Plaintiff informing her that she was to be "administratively terminated" as of that date because she had "been on a medical leave of absence for a continuous period of six months."

17. The unnecessary FMLA leave that Defendant forced Plaintiff take exhausted her 12-week FMLA leave entitlement.

18. Throughout the time Defendant forced Plaintiff to take unnecessary leave in 2003, Defendant consistently urged Plaintiff to file for disability insurance benefits. Plaintiff received forms in the mail to be filled out by her, the physician who put her off of work, and Defendant.

19. On or about November 10, 2003, Plaintiff by and through counsel, sent Defendant a form to be filled out by the physician who put Plaintiff off of work, asserting that the physician was hired by Defendant, only Defendant knew who this was, and that Defendant should therefore take the steps necessary to get this form filled out. Defendant sent the form back, refusing to have it filled out and still refusing to identify the physician who made the determination that Plaintiff should not be allowed to work.

## COUNT I
## VIOLATIONS OF FAMILY AND MEDICAL LEAVE ACT ("FMLA")
## 29 U.S.C. §2601 et seq.

20. Plaintiff reincorporates the allegations in ¶¶1-19 above as if fully rewritten here.

21. Plaintiff is an "eligible employee" as defined by 29 U.S.C. §2611(2).

22. Defendant is an "employer" as defined by 29 U.S.C. §2611(4)(A).

23. Defendant's demand to review and approve of any and every medical treatment received by Plaintiff starting in January of 2003 was in retaliation for her use of

4

FMLA leave entitlement in the years 2001 and 2002, and causally led to actions that resulted in Plaintiff being barred from the workplace starting in May of 2003, and ultimately discharged in December of 2003.

24. Defendant violated FMLA by forcing Plaintiff to use up her entitlement in May of 2003 when Plaintiff was not suffering from any "serious health condition," as that is defined by the Act.

25. Defendant's violation of FMLA was intentional.

26. Defendant's violations of the FMLA entitle Plaintiff, pursuant to 29 U.S.C. §2617(a), to monetary damages which include back pay and benefits, liquidated damages and attorneys fees and costs of bringing this litigation, in a amount to be determined at trial, but in any event not less than $150,000.00.

## COUNT II
## HANDICAP DISCRIMINATION
## O.R.C. 4112.01 et seq.

27. Plaintiff reincorporates the allegations in ¶¶1-26 above as if fully rewritten here.

28. Plaintiff is an "employee" as defined by O.R.C. §4112.01(A)(3).

29. Defendant is an "employer" as defined by O.R.C. §4112.01(A)(2).

30. Plaintiff was perceived as having a "handicap" as defined by O.R.C. §4112.02(A)(13), that handicap being an alleged medical condition that Defendant perceived made it impossible for her to even take a functional capacities exam, and therefore disqualified her from a wide range of jobs.

31. Defendant perception caused it to discriminate against Plaintiff in the manner described in ¶¶11-16 above.

5

32. Defendant's violation of O.R.C. §4112.01 et seq., pursuant to O.R.C. §4112.99, entitles Plaintiff to reinstatement, and damages including back pay and benefits, compensatory damages, punitive damages, attorneys fees and costs, in an amount to be determined at trial, but in any event not less than $500,000.00.

## COUNT III
### WRONGFUL DISCHARGE IN VIOLATION OF OHIO PUBLIC POLICY

33. Plaintiff reasserts and reincorporates each and every allegation contained in ¶¶1-32 above as if fully rewritten here.

34. The State of Ohio has public policies against discharging an individual due to (a) an individual being unlawfully forced to reveal private medical information as a condition of continued employment; and/or, (b) use of unlawfully obtained private medical information to disqualify an individual from employment.

35. Putting out of work and then discharging an individual under circumstances such as those involved in Defendant's discharge of Plaintiff from her employment would jeopardize one or more of the public policies set forth in ¶31 above.

36. The determining factor in Defendant's discharge of Plaintiff was its opposition to one or more of the public policies set forth in ¶31 above.

37. Defendant had no overriding business justification for discharging Plaintiff.

38. Defendant's unlawful discharge of Plaintiff entitles Plaintiff to compensatory damages, punitive damages, and attorneys fees and costs, in an amount to be determined at trial, but in any event not less than $500,000.00.

## COUNT IV
### BREACH OF FIDUCIARY DUTY – ERISA

39. Plaintiff reincorporates the allegations in ¶¶1-38 as if fully rewritten here.

6

40. Defendant's Disability Insurance Plan ("Plan") is an employee welfare benefit plan governed by the Employee Retirement Income Security Act ("ERISA").

41. Defendant is the administrator of the Plan.

42. As the Plan administrator, Defendant has a duty to assist Plaintiff in applying for and obtaining benefits that it asserts that it believes she is entitled to under its Disability Insurance Plan ("Plan").

43. Defendant's refusal to identify the physician who put Plaintiff off of work, or to have that physician fill out the proper forms regarding Plaintiff's alleged disability, is a breach of its fiduciary duty to assist Plaintiff in applying for and obtaining ERISA benefits.

44. Defendant refused to take the aforementioned actions in bad faith, as part of a pattern of deliberate obfuscation and deception regarding Plaintiff's job status.

45. The aforementioned breach of fiduciary duty has damaged Plaintiff, and entitles her to compensatory damages in an amount to be determined at trial, but in any event not less than $250,000.00.

WHEREFORE, Plaintiff demands,

for Count I, reinstatement, monetary damages including back pay and benefits, statutory liquidated damages, and attorneys fees and costs in an amount to be determined at trial, but in any event not less than $150,000.00;

for Count II, reinstatement, and monetary damages including back pay and benefits, compensatory damages, punitive damages, attorneys fees and costs, in an amount to be determined at trial, but in any event not less than $500,000.00;

for Count III, monetary damages including compensatory damages, punitive damages, and attorneys fees and costs in an amount to be determined at trial, but in any event not less than $500,000.00; and,

for Count IV, monetary damages including compensatory damages, attorneys fees and costs in an amount to be determined at trial, but in any event not less than $250,000.00

## JURY DEMAND

Plaintiff demands that a jury decide all of the above claims.

Respectfully Submitted,

Gary A. Reeve (0064872)
Trial Attorney for Plaintiff
Patrick M. Watts (0075099)
Co-Counsel for Plaintiff
Reeve & Watts
623 High Street
Worthington, Ohio  43085
(614) 547-0370